UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHARLES PIERCE,

       Plaintiff,

vs.                                            Case No.  3:06-cv-335-J-32MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

       Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, it is recommended the Commissioner's decision be **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on September 27, 2001, alleging an inability to work since June 1, 2001.  (Tr. 111-13, 338-40).  The Social Security Administration ("SSA") denied these applications initially and on reconsideration. (Tr. 28B-31, 75-76, 79-81).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on July 17, 2003, however, at

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

the hearing, Plaintiff withdrew his request for a hearing and the ALJ issued a dismissal order on July 21, 2003. Plaintiff requested review of the dismissal order by the Appeals Council and on November 14, 2003, the Appeals Council vacated the dismissal order. (Tr. 60-62). A second hearing was scheduled for March 9, 2004. (Tr. 46-49). During that hearing, Plaintiff requested a continuance in which to obtain representation. The ALJ granted the continuance and conducted a third hearing on June 2, 2004. (Tr. 364-431).

On October 14, 2004, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 19-28A). On December 1, 2004, Plaintiff filed a Request for Review by the Appeals Council. (Tr.15). The Appeals Council denied Plaintiff's request for review on February 21, 2006, thus making the ALJ's October 14, 2004 decision the final decision of the Commissioner. (Tr. 6-9). Plaintiff timely filed his Complaint in the U.S. District Court on April 12, 2006. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since June 1, 2001, due to back and leg pain and a bad shoulder. (Tr. 146).

### B.     Summary of Evidence Before the ALJ

Plaintiff was 48 years of age on the date of the hearing. (Tr. 370-71). He has an eighth grade education and six months of vocational training in carpentry and masonry. (Tr. 371). Plaintiff has past relevant work experience as a tile finisher, boat outfitter, sales attendant, drywall applicator and automobile body repair helper. (Tr. 147).

Plaintiff's medical history is highlighted in the ALJ's decision and therefore, will not be repeated in full here. However, by way of summary, the record indicates Plaintiff was injured in a motorcycle accident in 1985 and as a result, Plaintiff underwent several surgeries. One surgery placed hardware in Plaintiff's knee and a second surgery was required to remove portions of the hardware because a pin had become dislodged. (Tr. 305-28). On June 3, 1986, Plaintiff was examined by Dr. G. Alan Hahn, Jr., M.D. who noted that Plaintiff had very little knee pain. (Tr. 305). However, x-rays of Plaintiff's knee taken on January 20, 2004 revealed severe tricompartmental degenerative joint disease. (Tr. 222).

Plaintiff also underwent several x-rays and MRIs of his back. On October 23, 2001, an x-ray of Plaintiff's lumbar spine showed "rather severe disc space narrowing at the L3-4 disc level with a mild amount of retrolisthesis of L3 on L4" as well as "disc space narrowing at L1-2 and L2-3." (Tr. 210). In a follow-up MRI of the lumbar spine on November 23, 2001, it was noted that Plaintiff had:

> [d]ensity appearing related to disc fragment possibly secondary to old area of herniation on the left at L3/4. Posterocentral disc bulging which is relatively mild at L4/5. Degenerative disc changes are also most prominent at L3/4 and L4/5. The remainder of the lumbar spine appears unremarkable.

(Tr. 203).

On January 2, 2002, Plaintiff underwent a consultative examination by Roberto Puente-Guzman, M.D. (Tr. 155-60). During this examination, Plaintiff reported smoking one-and-a-half packs of cigarettes a day and drinking a twelve-pack of beer per day. (Tr. 156). Dr. Puente-Guzman opined that Plaintiff was:

>limited physically to avoiding heavy lifting, repetitive pushing
>or pulling, or overhead activity of the right upper extremity.
>He is to avoid kneeling, squatting, crawling, and climbing.
>He should also avoid repetitive stooping or bending.

(Tr. 158).

In March 2002, Plaintiff was seen by Dr. Robert B. Dehgan. (Tr. 268-72). Dr. Dehgan diagnosed Plaintiff with lumbar radiculopathy and degenerative disc disease at L3, 4. (Tr. 272). Dr. Dehgan opined that Plaintiff was not a surgical candidate and encouraged Plaintiff to remain active and to do stretching exercises. Id. Indeed, Dr. Dehgan gave Plaintiff exercises for the lumbar spine and for strengthening of the abdominal muscles. Id. On April 19, 2002, x-rays of Plaintiff's cervical spine were conducted. The x-rays revealed mild degenerative changes at C5-6 and a questionable fracture from the spinous process posteriorly at C7. (Tr. 193). On January 20, 2004, Plaintiff had another x-ray of his lumbar spine. In this x-ray, it appeared Plaintiff suffered from degenerative disc disease principally involving the L3-4 disc. (Tr. 222).

The records from Plaintiff's primary care physician reveal that on July 22, 2002, Plaintiff reported he suffered from a seizure the night before. (Tr. 236). The doctor believed the seizure was related to Plaintiff's alcohol consumption and instructed Plaintiff to stop drinking. Id. On September 3, 2003, a chest x-ray revealed evidence of Chronic Obstructive Pulmonary Disease ("COPD"). (Tr. 223). No further records address the COPD and Plaintiff admitted during the hearing that he was not receiving any treatment for his respiratory problems. (Tr. 391-92).

Two non-examining physicians completed Physical Residual Functional Capacity ("RFC") Assessments on Plaintiff on January 11, 2002 and June 19, 2002. (Tr. 161-68,

169-76).  The first assessment was completed by Robert L. Steele, M.D.  Dr. Steele determined Plaintiff was occasionally able to lift up to 20 pounds, frequently able to lift and/or carry 10 pounds; was able to stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday; sit (with normal breaks) for a total of 6 hours in an 8-hour workday and had no limitations on his ability to push or pull with his upper extremities.  (Tr. 162).  Dr. Steele also determined Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl.  (Tr. 163).  Dr. Steele found Plaintiff was not subjected to any manipulative, visual, communicative or environmental limitations.  (Tr. 165).

The second assessment was completed by Harry L. Collins, Jr., M.D. and was virtually identical to the first RFC assessment except that it noted Plaintiff could frequently climb, balance and stoop (Tr. 171) and found Plaintiff should avoid concentrated exposure to hazards such as machinery and heights.  (Tr. 173).

During the hearing, Plaintiff testified he experiences pain in his back and in his left leg.  (Tr. 382).  He claimed that the pain in his back is a 10 on a scale of zero to 10, "with ten being a requirement that [Plaintiff] go to the emergency room."  (Tr. 415).  Plaintiff also stated the pain is constant and that it "hurts all the time."  Id.  Plaintiff claimed he had not had any sort of therapy such as epidural injections, trigger point injections, acupuncture or whirlpool therapy because he could not afford them.  (Tr. 384).

Plaintiff admitted he had a long history of alcohol problems and testified he no longer had a driver's license because it had been permanently revoked as a result of four DUIs.  (Tr. 372, 385).  Plaintiff stated he had stopped drinking a couple of months before the hearing but claimed he had been drinking about a six pack of beer a day.

5

(Tr. 384). Plaintiff stated he bought his own beer about fifty percent of the time and that otherwise, friends brought him the beer to drink. (Tr. 406). Plaintiff also claimed he stopped drinking for a year-and-a-half after he had a seizure, however, he started drinking again because his medication was not helping the pain and he needed the alcohol to help him sleep and to calm his nerves. (Tr. 386-87). Plaintiff testified he had been smoking for about thirty years, but had quit the same time he quit drinking. (Tr. 392). He admitted to smoking a pack a day prior to that time and stated that he and his wife bought the cigarettes. (Tr. 392-93).

Plaintiff testified that as far as daily activities go, he could do a little vacuuming, wash the dishes, do the laundry and make the bed. (Tr. 395). Plaintiff said he could sit for five or ten minutes at the most and could stand for about five or ten minutes. (Tr. 395-96). He claimed to be able to walk only about fifty yards. (Tr. 396).

    **C.**     **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet

6

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Social Security Act and was insured for benefits up through the date of the decision. (Tr. 21, 28). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Id. At step two, the ALJ found Plaintiff had the following severe impairments:

> history of degenerative joint disease of the lumbar spine; history of mild degenerative disc disease at C5-6; history of alcohol abuse; history of degenerative tricompartmental disease of the left knee; history of COPD secondary to tobacco abuse.

(Tr. 22, 28). At step three, the ALJ determined Plaintiff's impairments did not "meet or medically equal, either singly or in combination [any] of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Id. The ALJ further determined Plaintiff retained the residual functional capacity in an 8-hour workday to:

> sit for 4 hours; stand and/or walk 4 hours with the need to alternate his position between sitting and standing at least every 30 minutes; lift and/or carry 20 pounds occasionally; lift and/or carry 10 pounds or less more frequently; avoid repetitive pushing, pulling, or overhead activity of the right

> upper extremity; avoid kneeling, squatting, crawling,
> climbing; avoid repetitive stooping or bending. The claimant
> must work in a temperature controlled work setting
> secondary to the chronic obstructive pulmonary disease.

(Tr. 25). In making this determination, the ALJ found Plaintiff's testimony regarding his pain and resulting limitations not fully credible. (Tr. 23-25).

At step four, the ALJ utilized the testimony of a vocational expert ("VE") during the hearing to determine if Plaintiff could perform any of his past relevant work. (Tr. 421-23). The VE explained that Plaintiff could not perform any of his past relevant work. (Tr. 25-26, 423). Accordingly, the ALJ proceeded to step five where he determined that based on Plaintiff's age, educational background, work experience, and residual functional capacity, Plaintiff was "capable of making a successful adjustment to work that exists in significant numbers in the national economy." (Tr. 28). In making this determination, the ALJ again utilized the testimony of the VE. (Tr. 27-28). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 28, 28A).

### III.    ANALYSIS

#### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a

suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff argues one issue on appeal. Plaintiff argues the ALJ committed error by failing to properly evaluate Plaintiff's credibility regarding his subjective complaints of pain and limitations. (Doc. 15). The Commissioner responds that the ALJ properly considered Plaintiff's subjective complaints.

### Whether the ALJ erred by failing to properly evaluate Plaintiff's subjective complaints regarding his back and knee problems.

Plaintiff takes the position that the ALJ improperly discounted his subjective complaints of pain. Plaintiff claims to be in constant pain and alleges that bending, lifting, squatting, standing, sitting and walking make the pain more severe. (Tr. 125-26).

During the hearing, Plaintiff testified he could sit and/or stand for five to ten minutes and could walk only about fifty yards. (Tr. 395-96). Plaintiff also testified that on a scale of one to ten, with ten "being a requirement that you go to the emergency room," his pain was a level ten. (Tr. 415).

Pain is a non-exertional impairment. Foote, 67 F.3d at 1559. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability. Foote, 67 F.3d at 1561. Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to

pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

In this case, although the ALJ mentioned the requirement that he consider symptoms, including pain, and the extent to which those symptoms are consistent with objective medical and other evidence, pursuant to 20 C.F.R. §§404.1529 and 416.929 and Social Security Ruling ("SSR") 96-7p; the ALJ did not cite the Eleventh Circuit pain standard, nor is it apparent from his decision that he applied the pain standard as outlined by caselaw, the regulations or SSR 96-7p.

The first part of the pain standard, evidence of an underlying medical condition, is implicit in the ALJ's finding that Plaintiff suffered from severe impairments.[2] Furthermore, the ALJ must have found Plaintiff had objective medical conditions that could give rise to the alleged symptoms, because otherwise, he was not required to assess the credibility of Plaintiff's allegations.  As such, the ALJ was required to consider Plaintiff's subjective complaints of pain and other symptoms.  The ALJ did so and found "the medical evidence suggests the claimant's left knee and back impairments are **partially** credible and he would be unable to do prolonged standing and walking and precluded from some postural activities."  (Tr. 25) (emphasis added).

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on

---

[2] The ALJ found Plaintiff had the following severe impairments: "history of degenerative joint disease of the lumbar spine; history of mild degenerative disc disease at C5-6; history of alcohol abuse; history of degenerative tricompartmental disease of the left knee; history of COPD secondary to tobacco abuse."  (Tr. 22, 28).

substantial evidence).  Additionally, the Code of Federal Regulations sets forth seven factors that an ALJ should consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5) treatment other than medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling 96-7p.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Here, the ALJ examined some of these factors and provided several reasons for his determination regarding Plaintiff's credibility.[3]  First, the ALJ found Plaintiff's credibility was weakened by the fact that he continued to work despite his alleged pain. (Tr. 23-24).  Next, the ALJ noted Plaintiff's sporadic course of medical treatment and his inconsistent statements about his pain.  (Tr. 24).  The ALJ found Plaintiff's credibility further eroded by his failure to follow prescribed medical treatment and follow medical advice to quit smoking and drinking.  (Tr. 24-25).  Finally, the ALJ noted Plaintiff's

---

[3] Although the ALJ does not discuss each of the seven factors, this is not error as the Eleventh Circuit does not require discussion of all seven factors explicitly.  French v. Massanari, 152 F.Supp.2d 1329, 1338, n.6 (M.D. Fla. 2001) (holding that "it is not reversible error that the administrative law judge did not expressly mention the side effects of [the plaintiff's] medications in his credibility determination"); Bechtold v. Massanari, 152 F.Supp.2d 1340, 1349, n.9 (M.D. Fla. 2001), aff'd, 31 Fed.Appx. 202 (11th Cir. 2001).

12

activities of daily living were consistent with competitive work. (Tr. 25). Plaintiff primarily takes issue with the ALJ's reliance on Plaintiff's work history, lack of medical treatment and inconsistent pain statements to discredit his testimony regarding subjective limitations and pain. (Doc. 15, pp. 17-19).

In the decision, the ALJ stated:

> There is no evidence establishing the claimant stopped working as a result of his medically determinable impairments. The claimant reported to his primary care physician he had severe pain in his left leg and back since his motorcycle accident in 1982. However, the claimant's earnings record reveals the claimant subsequently returned to substantial gainful activity. The claimant testified he ceased working in June 2001 because of pain, but the claimant's recent earnings record indicated the claimant had not engaged in substantial gainful activity since 1999. This raises the question as to whether the claimant became disabled in June 2001 because, according to the earnings record, the claimant ceased working at a substantial gainful activity level years before he alleged he was disabled and there is no evidence supporting a finding the claimant's impairments worsened at the time of the alleged onset date.

(Tr. 23-24) (internal citations omitted). Plaintiff attacks this finding and states that he "[r]epeatedly and consistently" complained about back pain and that the back pain "worsened in the past year." (Doc. 15, p.17). Plaintiff, however, does not cite to any records to support this claim. The Court finds no error in the ALJ looking to Plaintiff's work history in assessing Plaintiff's credibility. It is suspect that Plaintiff reported to his doctor that he had chronic pain in his leg and back since 1982 (Tr. 209), yet continued to work until 2001.

As for the inconsistencies regarding Plaintiff's onset date, Plaintiff points out that he was still working after 1999, but that the construction work he was performing did not

rise to the level of substantial gainful activity and therefore, this does not support a finding that his testimony was not credible. Plaintiff is correct that this would help explain the apparent inconsistencies. The ALJ questioned Plaintiff about his work history during the hearing and Plaintiff testified that he last worked in 2001. Perhaps the ALJ should have questioned Plaintiff further about the inconsistency before relying on it to discredit Plaintiff's testimony. In any event, this inconsistency is only one of several reasons cited by the ALJ to discount Plaintiff's credibility and therefore, the ALJ's reliance upon it is not reversible error.

Plaintiff also takes issue with the ALJ's reference to Plaintiff's "sporadic course of medical treatment" and "inconsistent pain statements." (Tr. 24). Specifically, the ALJ found:

> The treatment notes reflect the claimant was treated conservatively for his impairments, primarily with medication. The claimant did not seek alternative treatment modalities such as acupuncture, biofeedback or attend a pain management clinic. He did undergo a brief course of physical therapy with some benefit noted. Moreover, Dr. Dehgan opined the claimant was not a surgical candidate. . .

(Tr. 24) (internal citations omitted). Plaintiff points out that the fact that Plaintiff was not a surgical candidate has no bearing on his credibility, nor does it necessarily mean Plaintiff's condition is not serious. Instead, all it shows is that Plaintiff's condition would not benefit from surgery. The Court agrees. That Plaintiff was not a candidate for surgery does not necessarily undermine Plaintiff's credibility, however, the fact that Plaintiff was treated conservatively is not consistent with Plaintiff's claims that his pain was a level ten, defined as requiring that he go to the emergency room. Additionally, the record reflects that besides finding Plaintiff not a candidate for surgery, Dr. Dehgan

directed Plaintiff to remain active. (Tr. 272). This is certainly contrary to Plaintiff's alleged limitations. As such, the Court finds no error in the ALJ's credibility determination on this point.

Moreover, although Plaintiff does not point this out, the ALJ also based his credibility findings on Plaintiff's inconsistent testimony regarding his pain and the efficacy of his medications. Specifically, the ALJ noted that at the hearing, Plaintiff testified his pain was constant and was a 10. The ALJ then observed that on June 27, 2003, Plaintiff told Dr. Newman that his pain comes and goes and on September 3, 2003, Plaintiff described his pain as occasional. (Tr. 232-33). Additionally, Plaintiff testified at the hearing that the pain medications did not provide him with sufficient relief and therefore, he needed to self-medicate with alcohol. (Tr. 387). The medical records, however, contradict this claim. Indeed, the records show Plaintiff told his doctors on several occasions that the medications were helping. (Tr. 198-99, 256).

Plaintiff also attacks the ALJ's credibility assessment insofar as it related to Plaintiff's failure to follow medical treatment. In his decision, the ALJ stated:

> On February 20, 2004, the claimant refused to go to physical therapy, but previously, in December 2001, he reported feeling better with ongoing physical therapy. The claimant did not follow through with the pain management referral and reported he wanted to get an increased income to pay for the services before a no show again. The claimant also refused a recommended urinalysis because he could not afford it and did not obtain an updated lumbar spine MRI because of finances. The medical records and the claimant's testimony established a long standing history of alcohol abuse and tobacco abuse, indicating he has some financial resources but that he chose not to use such resources for proper medical treatment. Hence, the undersigned is not convinced that the claimant's discomfort is as severe as he alleged because the claimant has not

15

> been willing to put forth some effort to alleviate his symptoms in an area in which he could effect a change.

(Tr. 24) (internal citations omitted).  Plaintiff claims it was error for the ALJ to base his credibility determination on Plaintiff's failure to obtain treatment because Plaintiff could not afford the treatment.  To support this argument, Plaintiff points to the case <u>Dawkins v. Bowen</u>, 848 F.2d 1211 (11th Cir. 1988), in which the Eleventh Circuit held that failure to follow prescribed medical treatment does not preclude a finding that a claimant is disabled when the failure is justified by a lack of funds.  <u>Dawkins</u>, 848 F.2d at 1213.  While Plaintiff is correct that a lack of funds will excuse a claimant's failure to obtain medical treatment, such is not true when evidence reveals the claimant actually has funds.

During the June 2, 2004 hearing, Plaintiff testified he had not obtained medical treatment since June 2001 because he did not have insurance and therefore, could not afford it.[4]  (Tr. 379).  The records show Plaintiff refused an updated MRI and a urinalysis due to lack of funds.  (Tr. 225, 228).  Additionally, Plaintiff told his doctor that he wanted to wait on pursuing pain management until he had more funds.  (Tr. 232).  Plaintiff also testified that he quit drinking and smoking a few months before the hearing.  (Tr. 384, 392).  Prior to that, Plaintiff had been smoking a pack of cigarettes a day and drinking approximately a six-pack of beer a day.  (Tr. 385, 392).  Although Plaintiff testified that his friends often brought the beer to his house, he admitted to purchasing his own beer about fifty percent of the time and admitted to purchasing his own cigarettes.  (Tr. 385,

---

[4] Plaintiff further testified that he did continue seeing two doctors at the medical clinic every month for pain medications.  (Tr. 379, 381).

393, 406). Based on this testimony, the ALJ found Plaintiff had financial resources but chose to use them to purchase alcohol and cigarettes rather than to obtain medical treatment. The ALJ found this conduct inconsistent with Plaintiff's claims that he could not afford to follow through with his pain management, undergo a urinalysis or an updated lumbar spine MRI. Such a credibility finding by the ALJ was proper. See East v. Barnhart, 2006 WL 2808242 **3 (11th Cir. 2006) (ALJ did not commit error in discrediting Plaintiff's subjective complaints based in part on her claim that she could not afford medication, however, evidence revealed she used her child support money to buy up to 45 packs of cigarettes per month); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (no error in finding plaintiff's subjective complaints of pain not credible where evidence revealed plaintiff had not taken pain medication for years and although plaintiff claimed he could not afford medication, no evidence suggested he sought any treatment offered to indigents or chose to forego smoking three packs of cigarettes a day to help finance pain medication); Jacobs v. Chater, 956 F.Supp. 1560, 1567-68 (D. Colo.1997) ( "[I]nability to pay for treatment does not necessarily preclude an ALJ from considering the failure to seek medical attention in credibility determinations, especially where the claimant could apparently afford beer and cigarettes.").

The ALJ also discredited Plaintiff's subjective complaints based on his inconsistent statements regarding drinking alcohol and smoking. The ALJ pointed out that Plaintiff claimed he stopped drinking after his seizure in July 2002, however, the records show Plaintiff continued to drink. (Tr. 236, 386). The ALJ specifically points to medical records showing that on August 6, 2002 Plaintiff was told to stop drinking. (Tr. 179). The Court has reviewed the records and although very difficult to read, it appears

17

to the Court that the office note states "[h]as stopped ETOH." Id. This would support Plaintiff's contention that he ceased drinking after the July 2002 seizure. Furthermore, the ALJ points to the notes regarding an office visit in September 2003 in which it states Plaintiff is drinking eight beers a day. (Tr. 231). During the hearing, Plaintiff testified that he stopped drinking after the seizure for about a year and a half and then starting drinking again because he was not getting relief from his medications. (Tr. 386). While September 2003 is not quite a year and a half after the seizure (in July 2002), it is a year after. As Plaintiff admitted during the hearing that he did start to drink again subsequent to trying to quit after the seizure, the Court does not find the ALJ's reliance on Plaintiff's inconsistent statements regarding drinking and smoking to be sufficient to discredit Plaintiff's credibility. Had the ALJ relied solely on this reason to discredit Plaintiff, the Court would have no problem finding error. However, the ALJ provided several other reasons for his credibility assessment. As this opinion illustrates, the Court finds these reasons in combination to be supported by substantial evidence and sufficient to support the ALJ's determination regarding Plaintiff's credibility.

Finally, the ALJ found Plaintiff's credibility in question based on his testimony regarding his daily activities. Plaintiff testified that he washed dishes, vacuumed, did the laundry and visited with his children and grandchildren. (Tr. 394-95). The ALJ properly found these activities to be inconsistent with Plaintiff's claims regarding his pain and abilities.

In sum, the undersigned finds that the ALJ properly considered Plaintiff's subjective complaints, but rejected them as not credible to the degree alleged and articulated explicit reasons for his decision to discount them. Accordingly, the Court

believes the ALJ appropriately performed his task of assessing credibility and therefore, declines to disturb the determination of the ALJ that Plaintiff's subjective complaints of pain were not wholly credible.

## IV.     CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence and is based upon the proper legal standards.  Accordingly, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **AFFIRMED**.


**DONE AND ENTERED** at Jacksonville, Florida, this  26th  day of February, 2007.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Honorable Timothy J. Corrigan,
    United States District Judge